James E. Cecchi                                Roland Tellis
Lindsey H. Taylor                              Mark Pifko
**CARELLA, BYRNE, CECCHI,**                    Pablo Orozco
**OLSTEIN, BRODY & AGNELLO, P.C.**             **BARON & BUDD, P.C.**
5 Becker Farm Road                             15910 Ventura Boulevard, Suite 1600
Roseland, New Jersey 07068                     Encino, California  91436
(973) 994-1700                                 (818) 839-2333

Christopher A. Seeger
Jeffrey S. Grand
Scott A. George
**SEEGER WEISS LLP**
77 Water St., 26th Fl.
New York, New York 10005
(212) 584-0700

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN CHEN, TERESA DELANEY, ROBERT PENZLER, ERICK FERNANDEZ, TYRONE SMITH, HOLLY MYERS, KARL SCHICKEL, BRIAN GOOD, STACY GOOD, ANTONIO ARROYO, KATHI IRWIN, ANGELA BARRY, HEATHER SONNENBERG, JASON THROCKMORTON, DYLAN HANSON, MARK MADDOX, ELMER BRINKMAN, RAJNISH VERMAN, CHRISTOPHER AUMAN, AND DULCE RODRIGUEZ individually and on behalf of all others similarly situated, | Civil Action No.: |
| | |
| | **COMPLAINT AND** <u>**DEMAND FOR JURY TRIAL**</u> |
| Plaintiffs, | |
| vs. | |
| VOLKSWAGEN GROUP OF AMERICA, INC.; AUDI OF AMERICA, INC.; AUDI AKTIENGESELLSCHAFT; and VOLKSWAGEN AKTIENGESELLSCHAFT, | |
| Defendants. | |

Plaintiffs Steven Chen, Teresa Delaney, Robert Penzler, Erick Fernandez, Tyrone Smith,

Holly Myers, Karl Schickel, Brian Good, Stacy Good, Antonio Arroyo, Kathi Irwin, Angela

Barry, Heather Sonnenberg, Jason Throckmorton, Dylan Hanson, Mark Maddox, Elmer Brinkman, Rajnish Verma, Christopher Auman, and Dulce Rodriguez (collectively "Plaintiffs") individually and on behalf of all other members of the putative, nationwide class and state classes defined below (collectively "Class"), allege for their Class Action Complaint ("Complaint") against defendants Volkswagen Group of America, Inc.; Audi of America, Inc.; Audi Aktiengesellschaft and Volkswagen Aktiengesellschaft (collectively "Defendants" or "Volkswagen"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief based upon the investigation, as follows:

## NATURE OF THE CASE

1.     Defendants have already ***admitted*** that they rigged hundreds of thousands of Volkswagen and Audi vehicles to evade myriad, strict environmental laws designed to protect public health.  Defendants have also already ***admitted*** that they deliberately concealed from their customers, the public and regulators that the diesel Volkswagen and Audi vehicles Defendants manufactured, marketed and sold emit more toxic pollutants than (a) the law allows and (b) Defendants represented in their aggressive marketing campaigns.

2.     In fact, shortly before resigning, Defendants' Chief Executive Officer, Martin Winterkorn, conceded Defendants had deliberately deceived the public and regulators, noting that

> Manipulation and Volkswagen – that must never be allowed to happen again. Millions of people all over the world trust our brands, our cars and our technologies.  I am deeply sorry we have broken this trust.  I would like to make a formal apology to our customers, to the authorities and to the general public for this misconduct.[1]

---

[1]http://www.volkswagenag.com/content/vwcorp/info_center/en/themes/2015/09/Volkswagen_AG_has_issued_the_following_information.html

2

Significantly, Dr. Winterkorn additionally stated that Defendants were willing to "do everything necessary to win back trust – step by step." *Id.*

3.      At its core, this lawsuit tests Defendants' commitment to redressing the economic harms that Plaintiffs and the Class have suffered as a result of Defendants' egregious, profit-driven policy of deceit.

## JURISDICTION AND VENUE

4.      This Court may properly exercise jurisdiction in this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Plaintiffs and the Class are citizens of states different than Defendants' home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.      This Court may also properly exercise jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a federal RICO claim against Defendants.  This Court may also exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because Plaintiffs' federal and state law claims arise from the same set of facts.

6.      This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1965 because Defendants are either incorporated in the State of New Jersey or are found or have agents or transact business in this District.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendants have caused harm to Plaintiffs or members of the Class who reside in this District.  Volkswagen Group of America, Inc. and Audi of America, Inc. are also incorporated

under the laws of New Jersey.  Venue is likewise proper in this district pursuant to 18 U.S.C. § 1965.

**PARTIES**

**Plaintiffs**

8.     Unless otherwise indicated, all Plaintiffs purchased their Dirty Vehicles (*see* ¶ 95, *infra*) primarily for personal, family and household use.  All Plaintiffs identified below, just like all members of the Class, were harmed by Defendants' conduct and suffered actual damages.

9.     That the Dirty Vehicles emit a significantly greater amount of toxic pollutants than (a) is allowable under the regulations and (b) was represented by Defendants, greatly diminishes the value of Plaintiffs' Dirty Vehicles.  Such vehicles and their corresponding brands have been stigmatized as a result of being recalled and in light of the widespread publicity given to Defendants' deceptions.

10.     Additionally, Plaintiffs and members of the Class failed to receive the benefit of their bargain.  They purchased and leased Dirty Vehicles that are of a lesser standard, grade and quality than represented by Defendants, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation.  All Plaintiffs and members of the Class either purchased or leased Dirty Vehicles for a higher price than they would have been willing to pay had the true "dirty" nature of the vehicles been disclosed.

11.     Further, all Plaintiffs and members of the Class suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off work, paying for rental cars or other transportation arrangements, and child care.

**Steven Chen – New Jersey**

12.    Plaintiff Steven Chen is a citizen of New Jersey, residing in River Edge, New Jersey.  He presently owns a 2010 Volkswagen Jetta TDI that he purchased new from Douglas Volkswagen in Summit, New Jersey.  Plaintiff Chen paid approximately $28,000 for his vehicle.

13.    Plaintiff Chen recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Chen purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

14.    Plaintiff Chen would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff Chen further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Teresa Delaney - Alabama**

15.    Plaintiff Teresa Delaney is a citizen of Alabama, residing in Birmingham, Alabama and presently owns a 2014 diesel Volkswagen Beetle Convertible that she purchased new from Royal Automotive in Birmingham.  Plaintiff Delaney paid approximately $29,000 for her vehicle.

16.    Plaintiff Delaney recalls that prior to purchasing her Dirty Vehicle, she encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Delaney purchased her Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

17.    Plaintiff Delaney would not have purchased her Dirty Vehicle or would not have paid as much for it if she had known of the problems associated with its toxic emissions.

Plaintiff Delaney further believes that the value of her Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Robert Prenzler - Arizona**

18.     Plaintiff Jackson Prenzler is a citizen of Arizona, residing in Phoenix, Arizona. He presently owns a 2009 Volkswagen Jetta TDI that he purchased new from a Volkswagen dealership in Phoenix.

19.     Plaintiff Prenzler recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Prenzler purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

20.     Plaintiff Prenzler would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Erik Fernandez - California**

21.     Plaintiff Erik Fernandez is a citizen of Arizona, residing in San Mateo, Arizona. He presently owns a 2011 Volkswagen Jetta TDI that he purchased new from a Volkswagen dealership in San Francisco, California.  Plaintiff Fernandez paid approximately $30,000 for the vehicle.

22.     Plaintiff Fernandez recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Fernandez purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

23.    Plaintiff Fernandez would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions. Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Tyrone Smith - California**

24.    Plaintiff Tyrone Smith is a citizen of California, residing in Sacramento, California and currently owns a 2012 Volkswagen Golf TDI that he purchased new from the Laser Dealership in Sacramento.  Plaintiff Smith paid approximately $28,000 for his vehicle.

25.    Plaintiff Smith recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Smith purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

26.    Plaintiff Smith would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Holly Myers - California**

27.    Plaintiff Holly Myers is a citizen of California, residing in Portola Valley, California and presently owns a 2012 Volkswagen Jetta TDI Sportswagen that she purchased from Boardwalk Volkswagen in Redwood City, California.  Plaintiff Myers paid approximately $28,000 for her vehicle.

28.    Plaintiff Myers recalls that prior to purchasing her Dirty Vehicle, she encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of

the Dirty Vehicles generally.  Plaintiff Myers purchased her Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

29.    Plaintiff Myers would not have purchased her Dirty Vehicle or would not have paid as much for it if she had known of the problems associated with its toxic emissions. Plaintiff Myers further believes that the value of her Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Karl Schickel - Colorado**

30.    Plaintiff Karl Schickel is a citizen of Colorado, residing in Avon, Colorado and presently owns a 2013 Volkswagen Jetta TDI he purchased new from Emich Volkswagen in Denver, Colorado.  Plaintiff Schickel paid approximately $28,000 for the vehicle.

31.    Plaintiff Schickel recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Schickel purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

32.    Plaintiff Schickel would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Brian and Stacy Good - Illinois**

33.    Plaintiffs Brian and Stacy Good are citizens of Illinois, residing in Bartonville, Illinois and presently own a 2014 Jetta TDI.  They purchased the vehicle new from Libertyville Volkswagen in Libertyville, Illinois.  The Goods paid approximately $35,000 for their vehicle.

34.     Prior to purchasing their Dirty Vehicle, the Goods encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  The Good Plaintiffs purchased their Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

35.     Brian and Stacy Good would not have purchased their Dirty Vehicle or would not have paid as much for it if they had known of the problems associated with its toxic emissions. Plaintiffs further believe that the value of their Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Antonio Arroyo – Michigan**

36.     Plaintiff Antonio Arroyo is a citizen of Michigan, residing in Utica, Michigan. He presently owns a 2014 Volkswagen Jetta TDI that he purchased new from Rochester Hills Volkswagen in Rochester Hills, Michigan.

37.     Plaintiff Arroyo recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Arroyo purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

38.     Plaintiff Arroyo would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff Arroyo further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Elmer Brinkman – Minnesota**

39.    Plaintiff Elmer Brinkman is a citizen of South Dakota, residing in Watertown, South Dakota.  He presently owns a 2013 Volkswagen Jetta TDI that he purchased used from Luther Volkswagen in Burnsville, Minnesota.

40.    Plaintiff Brinkman recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Brinkman purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

41.    Plaintiff Brinkman would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff Brinkman further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Kathi Irwin - Missouri**

42.    Plaintiff Irwin is a citizen of Missouri, residing in Spring Field, Missouri and presently owns a 2013 Volkswagen Jetta TDI that he purchased new in Springfield Imports in Springfield.

43.    Plaintiff Irwin recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Irwin purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

44.    Plaintiff Irwin would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff

Irwin further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Angela Barry – New Hampshire**

45.     Plaintiff Angela Barry is a citizen of New Hampshire, residing in Grafton, New Hampshire.  She presently owns a 2014 Volkswagen Golf TDI Sportswagen that she purchased new from the Quirk Dealership in Manchester, New Hampshire.  Plaintiff Barry paid approximately $25,000 for the vehicle.

46.     Plaintiff Barry recalls that prior to purchasing her Dirty Vehicle, she encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Barry purchased her Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

47.     Plaintiff Barry would not have purchased her Dirty Vehicle or would not have paid as much for it if she had known of the problems associated with its toxic emissions. Plaintiff further believes that the value of her Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Heather Sonnenberg – New York**

48.     Plaintiff Heather Sonneberg is a citizen of New York, residing in Brentwood, New York.  She owned a 2012 Volkswagen Jetta TDI that she purchased new from the Atlantic Volkswagen in West Islip, New York.

49.     Plaintiff Sonnenberg recalls that prior to purchasing her Dirty Vehicle, she encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Sonnenberg purchased her Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

11

50.    Plaintiff Sonnenberg would not have purchased her Dirty Vehicle or would not have paid as much for it if she had known of the problems associated with its toxic emissions.

51.    Sickened by Defendants' betrayal, Plaintiff Sonnenberg no longer wished to continue driving her Dirty Vehicle.  Accordingly, in late September or early October 2015, Plaintiff Sonnenberg asked Atlantic Volkswagen, where she had purchased her vehicle, to buy it back.  The dealership refused, noting that it would take a loss because it is no longer authorized to sell Dirty Vehicles.  Plaintiff Sonnenberg then went to another Volkswagen dealership who agreed to purchase the vehicle for $4,000 less than it was worth (according to Kelley Blue Book).  Plaintiff Sonnenberg sold her Dirty Vehicle to that dealership shortly thereafter.

**Jason Throckmorton – North Carolina**

52.    Plaintiff Jason Throckmorton is a citizen South Carolina, residing in Indian Land, South Carolina.  He presently owns a 2014 Volkswagen Beetle TDI that he purchased new from Volkswagen of South Charlotte, North Carolina.

53.    Plaintiff Throckmorton recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Throckmorton purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

54.    Plaintiff Throckmorton would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Dylan Hanson – North Dakota**

55.     Plaintiff Dylan Hanson is a citizen of North Dakota, residing in Fargo, North Dakota.  He presently owns a 2015 Volkswagen Jetta TDI that he purchased new from a dealership in Fargo.  Plaintiff Hanson paid approximately $26,000 for the vehicle.

56.     Plaintiff Hanson recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Hanson purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

57.     Plaintiff Hanson would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Mark Maddox – Ohio**

58.     Plaintiff Mark Maddox is a citizen of Ohio, residing in Garrettsville, Ohio.  He presently owns a 2012 Volkswagen Jetta TDI Sportswagen that he purchased from a Volkswagen dealership in Bedford, Ohio.  Plaintiff Maddox paid approximately $27,000 for the vehicle.

59.     Plaintiff Maddox recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Maddox purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

60.     Plaintiff Maddox would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff

further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Rajnish Verma – Texas**

61.    Plaintiff Rajnish Verma is a citizen of Texas, residing in Cypress, Texas.  He presently owns a 2014 Volkswagen Passat TDI that he purchased new from West Houston Volkswagen in Houston.  Plaintiff Verma paid approximately $30,000 for the vehicle.

62.    Plaintiff Verma recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Verma purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

63.    Plaintiff Verma would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Christopher Auman – Virginia**

64.    Plaintiff Christopher Auman is a citizen of New Jersey, residing in Cape May, New Jersey.  He presently owns a 2014 Volkswagen Jetta TDI that he purchased from a dealership in Virginia.

65.    Plaintiff Auman recalls that prior to purchasing his Dirty Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Auman purchased his Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

66.     Plaintiff Auman would not have purchased his Dirty Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Dulce Rodriguez – Virginia**

67.     Plaintiff Dulce Rodriguez is a citizen of Florida, residing in St. Cloud, Florida and presently owns a 2013 diesel Volkswagen Passat that she purchased new from First Team Volkswagen in Roanoke, Virginia.  Plaintiff Rodriguez paid approximately $27,000 for her vehicle.

68.     Plaintiff Rodriguez recalls that prior to purchasing her Dirty Vehicle, she encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Dirty Vehicles generally.  Plaintiff Rodriguez purchased her Dirty Vehicle in large measure because it was represented as being "clean" and fuel efficient.

69.     Plaintiff Rodriguez would not have purchased her Dirty Vehicle or would not have paid as much for it if she had known of the problems associated with its toxic emissions. Plaintiff Rodriguez further believes that the value of her Dirty Vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

**Defendants**

70.     Defendant Volkswagen Group of America, Inc. ("VW USA") is a corporation doing business in all 50 states, including New Jersey.  It is organized under the laws of the State of New Jersey and its principal place of business is in Herndon, Virginia.  At all relevant times, VW USA was engaged in the business of designing, manufacturing, constructing, assembling,

marketing, distributing, and selling automobiles throughout the United States, including but not limited to the Dirty Vehicles.

71.    Defendant Audi of America, Inc. ("Audi USA") is a corporation doing business in all 50 states, including New Jersey. It is organized under the laws of the State of New Jersey and its principal place of business is in Herndon, Virginia. At all relevant times, Audi USA was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles throughout the United States, including but not limited to the Dirty Vehicles.

72.    Defendant Volkswagen Aktiengesellschaft ("VW AG") is a foreign, for-profit legal entity with its principal place of business in Wolfsburg, Germany. VW AG is the parent corporation of defendants VW USA and Audi AG. At all relevant times, Audi AG was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles throughout the United States, including but not limited to the Dirty Vehicles.

73.    Defendant Audi Aktiengesellschaft ("Audi AG") is a foreign, for-profit legal entity with its principal place of business in Ingolstadt, Germany. At all relevant times, Audi AG was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles throughout the United States, including but not limited to the Dirty Vehicles.

## FACTUAL ALLEGATIONS

74.    Defendants design, manufacture, market, distribute, and warrant Volkswagen and Audi vehicles in the United States. Defendants recently surpassed Toyota, becoming the world's largest automaker, with diesel engine vehicles accounting for over 20 percent of its sales. This

case involves approximately 500,000 model year 2009-2015 Volkswagen and Audi Dirty Vehicles.

**Defendants' False Promise of Clean Diesel**

75.     Diesel engines first became common in American passenger vehicles in the 1970s and 1980s, but gained a reputation as "dirty" because they emitted noxious gases and particulate matter.  As diesel engines need to be more robust than comparable gasoline engines, diesel-powered vehicles also cost more to produce and commanded a premium price.  These factors, combined with increasingly stringent emissions regulations caused diesel passenger vehicles to become increasingly unpopular in the American market.

76.     In the mid-2000s, California and several other states passed new emission standards strictly regulating exhaust emissions, including nitrogen oxides.  This effectively banned the sale of diesel passenger vehicles in these states because the nature of diesel engines inherently makes nitrogen oxide emissions a difficult problem to resolve.  Defendants and several other manufacturers addressed the increasingly exacting regulations by launching the joint BlueTec Diesel Initiative to research and develop emission treatment systems that complied with all applicable regulations.   By the late 2000s, Defendants claimed to have developed environmentally-friendly diesel engines that could meet modern emissions standards.

77.     Defendants expressly and deliberately marketed these new vehicles as "Clean Diesel" vehicles.  Taking advantage of then-rising fuel prices, and diesel engines' fuel-efficiency and high torque outputs, Defendants told consumers they could have it all—power, high fuel economy, and low emissions—if they paid a few thousand dollars more for its "clean" diesel vehicle.  Defendants embarked on a major marketing campaign emphasizing their vehicles' low

emissions and environmental friendliness.  The efforts included creating websites, putting out press releases and airing television commercials.

78.    In August 2008, Defendants kicked off the campaign by announcing that it had developed the first diesel vehicle compliant in all fifty states under modern emission standards, its 2.0L TDI (Turbocharged Direct Injection) engine.  Then-CEO Stefan Jacoby stated: "We're proud to be the first manufacturer to offer a clean diesel vehicle for sale in all fifty states" and argued that the clean diesel Jetta model "truly offer[s] a no compromise alternative fuel driving experience, that provides the customer the best of both worlds—excellent fuel efficiency combined with a dynamic driving experience."

79.    In 2009, the diesel Volkswagen Jetta TDI was selected as the Green Car of the Year by *Green Car Journal*.  Shortly thereafter Defendants  began to promote it as the "Official Pace Car of the Environment," describing it as the "best of both worlds, an alternative fuel vehicle with no compromises."  Defendants' website specifically emphasized emissions compliance, describing how "[f]uel efficiency, performance and convenience come standard with the 50-state compliant Jetta TDI sedan and Sportswagen models, which meet the most stringent emission standards in California."

80.    To further emphasize their environmental focus, Defendants created an entire campaign devoted to environmental sustainability called "Think Blue."  According to the campaign, Defendants were dedicated to sustainable mobility and eco-friendly living, and its diesel vehicles are part of an environmentally friendly lifestyle.  The TDI webpage states that "TDI represents one part of the Volkswagen Think Blue initiative, our goal of creating and encouraging eco-conscious products and behaviors."  Think Blue is "about being more responsible on the road and more environmentally conscious."

**Regulations Applicable to Diesel**

81.     Emissions of pollutants have often been an obstacle for diesel-powered vehicles. While the use of cleaner fuels and new technologies has improved certain types of emissions problems, others remain.  In particular, as a result of their high combustion and compression pressures, diesel engines typically produce high levels of nitrogen oxides, which  are a highly reactive group of gases that the EPA and other government agencies have found to create environmental problems and public health hazards.  For example, direct exposure to this pollutant can cause respiratory problems, such as lung irritation, bronchitis, or pneumonia. Further, when it combines with sunlight, nitrogen oxide may create photochemical smog, which appears as a brownish ground-level haze and causes chest pains, shortness of breath, coughing and wheezing, and eye irritation.

82.     Because of the hazards created by nitrogen oxide emissions, both the EPA and CARB have regulated them.  The Clean Air Act prohibits the sale of any vehicle in the United States that does not comply with emissions regulations set by the EPA.  42 U.S.C. § 7522.  The regulations include certification levels of different levels of stringency called certification bins. Defendants chose to certify the Dirty Vehicles to the Bin 5 standard, which has a maximum nitrogen oxide level of .05 g/mi for a vehicle's intermediate life (5 years/50,000 miles) and .07 g/mi for a vehicle's full useful life (10 years/120,000 miles). 40 C.F.R. § 86.1811-04(c). Moreover, every vehicle sold in the U.S. must be covered by Certificate of Conformity from the EPA. 40 C.F.R. § 86.1843-01.  However, vehicles are only covered by a Certificate of Conformity if they are sold as described in the manufacturer's application for certification. *Id.* at §86.1848-10(c)(6).

83.    On the state level, CARB adopted Low-Emissions Vehicle (LEV) II standards that generally became applicable in the 2004 model year. *See* http://www.arb.ca.gov/msprog/levprog/cleandoc/cleancomplete%20lev-ghg%20regs%201-15.pdf (amended January 1, 2015); Cal. Code. Regs. Tit. 13 § 1961. Under this standard, nitrogen oxide emissions were significantly tightened and required the Dirty Vehicles to emit no more than .05 g/mi initially, and no more than .07 g/mi over their useful life. Cal. Code. Regs. Tit. 13 § 221961. Additionally, car manufacturers must be certified by CARB in order to sell vehicles in California.

84.    Both federal and California regulations mandate that manufacturers include certain emissions-related labels on the vehicles they sell. First, the regulations require that an emissions label titled "Vehicle Emission Control Information" be placed under the hood or in the engine compartment and contain "an unconditional statement of compliance" with federal and California emissions regulations. 40 C.F.R. § 86.1807-01; Cal. Code. Regs. Tit. 13 § 1965. Auto manufacturers must affix this label to every motor vehicle that they intend to sell to the public in the United States subject to the applicable emissions standards.

**Defendants Deliberately Deceived Regulators and The Public**

85.    Nevertheless, despite the obvious harms caused by nitrogen oxide emissions and the elaborate regulatory framework governing those emissions, Defendants deliberately opted to continue manufacturing, selling and distributing Dirty Vehicles that put the public in harm's way. Rather than design diesel engines that complied with the applicable regulations, Defendants chose to design a mechanism that allowed them to deceive and defraud their customers, the public and the authorities. Specifically, Defendants installed in each Dirty Vehicle a "defeat device," which is hardware or software that "defeats" the vehicle's emission

controls during normal vehicle operation—enabling the vehicle to produce low emissions during emissions testing, but not during normal operation.

86.    The Clean Air Act makes it a violation for any person to sell, manufacture, or install any component in a motor vehicle "where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle . . . in compliance with the regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." Clean Air Act, 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854012(a)(3)(ii).  Similarly, the EPA has specifically recognized that electronic control systems that affect the emission control system's performance may be defeat devices.  EPA, *Advisory Circular Number 24-2: Prohibition on Emission Control Defeat Devices – Optional Objective Criteria* (Dec. 6, 1978).  Similarly, vehicles equipped with defeat devices, which reduce the effectiveness of the emission control system during normal driving conditions, cannot be certified by CARB.

**The "Dirty" Truth Comes To Light**

87.    In May 2014, West Virginia University's Center for Alternative Fuels, Engines & Emissions published the results of a study commissioned by the International Council on Clean Transportation that found in-use emissions from two Volkswagen vehicles (a 2012 Jetta and a 2013 Passat) that were significantly higher than the Tier 2 Bin 5 nitrogen oxide standard. The Jetta exceeded the standard by 15 to 35 times and the Passat exceeded it by 5 to 20 times.

88.    Following publication of the study, the EPA and CARB began to investigate the issue. Defendants responded that increased emissions could be the result of unexpected technical issues or conditions.  Defendants then issued a voluntary recall in December 2014, but testing

performed by CARB and the EPA showed that there was only a limited benefit to the recall and that the vehicles still did not comply with EPA or CARB standards.

89.    The EPA and CARB told Defendants that they would not approve certificates of conformity for Defendants' 2016 model year diesel vehicles until they explained the results, leading Defendants finally to admit that they had been deceiving the government and consumers. In a meeting with EPA and CARB staff on September 3, 2015, Defendants admitted that the Dirty Vehicles were designed and manufactured with a defeat device in the form of a sophisticated software algorithm that detected when the vehicle was being tested for emissions standards based on inputs.  During EPA emission testing, the vehicles' electronic control modules ran a particular calibration called the "dyno calibration" (referring to the equipment used in emissions testing–the dynamometer) that produced compliant emissions results.  At all other times during normal vehicle operation, the vehicle software ran a separate "road calibration" that reduced the effectiveness of the lean pollutant trap and emission control systems.  As a result, emissions of nitrogen oxides increased by a factor of 10 to 40 times above EPA compliant levels when driven by a consumer.

90.    On September 18, 2015, the EPA and CARB issued notices to Defendants directing CARB to immediately initiate discussions to rectify the emission non-compliance and noting that the EPA may seek up to $37,500 for each violation.  Christopher Grundler, director of the EPA's Office of Transportation of Air Quality, said it is "incomprehensible" how the world's largest automaker could install "defeat devices" to evade emissions requirements.  The agency said the vehicles' software intentionally detects when the car is undergoing official emissions testing, "and turns full emissions controls on only during the test."  When vehicles are being driven normally, the computer disables the emissions controls.

91.     Because disengaging pollution controls can yield better performance, implementing changes to the emissions system will negatively impact the Dirty Vehicles' performance and fuel economy.

## TOLLING OF THE STATUTE OF LIMITATIONS

**Fraudulent Concealment**

92.     Upon information and belief, Defendants deliberately concealed or failed to notify Plaintiffs and the Class that: (a) the Dirty Vehicles contained "defeat devices" specifically designed to mask the emission of pollutants, (b) the Dirty Vehicles emitted more pollutants than is allowable by regulators, and (c) the Dirty Vehicles are therefore not "clean," as Defendants had advertised.  Upon information and belief Defendants had knowledge of their deception as early as the 2008, when they began an advertising campaign that billed the Dirty Vehicles as "clean" ones.   As a direct result of Defendants' concerted efforts to deceive their customers, the public and regulators, Plaintiffs and the Class purchased their Dirty Vehicles without knowledge of their true, defective nature.  For this reason, any applicable statute of limitation has therefore been tolled.

**Estoppel**

93.     Defendants were under a continuous duty to disclose to Plaintiffs and the Class the true character, quality, and nature of the Dirty Vehicles.  Nevertheless, Defendants violated that duty and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Dirty Vehicles.  Plaintiffs and the Class reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

**Discovery Rule**

94.     The causes of action alleged herein did not accrue until Plaintiffs and the Class discovered that their vehicles were defective.  However, Plaintiffs and the Class had no realistic ability to discern that their vehicles were defective and did not comport with Defendants' representations until after approximately September 18, 2015 when the true nature of Defendants' deceptive practices was made public knowledge.

## CLASS ACTION ALLEGATIONS

95.     The term Dirty Vehicles as used herein includes the following 2.0 liter diesel versions of the following vehicles:

    a.      2009-2015 Volkswagen Jetta;

    b.      2009 – 2014 Volkswagen Jetta Sportswagen

    c.      2010-2015 Volkswagen Golf;

    d.      2015 Volkswagen Golf Sportswagen;

    e.      2010-2015 Audi A3;

    f.      2012-2015 Volkswagen Beetle (including the Beetle Convertible); and

    g.      2012-2015 Volkswagen Passat.

96.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3), on behalf of themselves and all others similarly situated.  Plaintiffs seek to represent the following classes, defined as (and collectively referred to as "Class"):

**Nationwide Class**

97.     All current and former owners and lessees of a Dirty Vehicle in the United States.

**New Jersey Class**

98.     All current and former owners and lessees of a Dirty Vehicle in who purchased or leased the Dirty Vehicle New Jersey.

**Alabama Class**

99.     All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Alabama.

**Arizona Class**

100.     All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Arizona.

**California Class**

101.     All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in California.

**Colorado Class**

102.     All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Colorado.

**Illinois Class**

103.     All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Illinois.

**Minnesota Class**

104.     All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Minnesota.

**Missouri Class**

105.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Missouri.

**New Hampshire Class**

106.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in New Hampshire.

**New York Class**

107.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in New York.

**North Carolina Class**

108.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in North Carolina.

**North Dakota Class**

109.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in North Dakota.

**Ohio Class**

110.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Ohio.

**Texas Class**

111.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Texas.

**Virginia Class**

112.    All current and former owners and lessees of a Dirty Vehicle who purchased or leased the Dirty Vehicle in Virginia.

113.    Excluded from the Class are Defendants, as well as Defendants' employees, affiliates, officers, and directors, including franchised dealers, any individuals who experienced physical injuries as a result of the defects at issue in this litigation, and the judge and court staff to whom this case is assigned.  Plaintiff reserves the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

114.    **Numerosity and impracticality of joinder.**  The members of the Class are so numerous that joinder of all members is impractical.  Hundreds of thousands of Class members purchased or leased Dirty Vehicles.  Members of the Class are easily and readily identifiable from information and records in Defendants' possession, custody, or control.

115.    **Commonality and predominance.**  There are common questions of law and fact that predominate over any questions affecting the individual members of the Class.  Common legal and factual questions include, but are not limited to:

a.    Whether Defendants installed a "defeat device" in Dirty Vehicles;

b.    Whether the Dirty Vehicles fail to comply with the applicable federal and state emissions regulations as a result of the defeat device;

c.    Whether Defendants had a duty to disclose the existence of the defeat device and its consequences to its customers;

d.    Whether Defendants' marketing of Class Vehicles was likely to deceive or mislead consumers;

e.    Whether the existence of the defeat device and its consequences would be considered material by an objectively reasonable person;

f.    Whether Defendants' conduct violates any applicable warranties; and

27

g.    Whether Defendants' conduct injured Plaintiff and the members of the proposed class.

116.    **Typicality.**    Plaintiffs' claims are typical of the claims of the other Class members.  Like other Class members, Plaintiffs purchased or leased Dirty Vehicles that, as matter of deliberate design, emit more dangerous pollutants than is allowable under applicable regulations and that are less "clean" and environmentally friendly than Defendants represented. Plaintiffs and the other Class members suffered damages as a direct, proximate result of the same wrongful practices that Defendants engaged in.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

117.    **Adequacy.**    Plaintiffs will fully and adequately protect the interests of the other members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation.  Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members.

118.    **Declaratory and Injunctive Relief.**    Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

119.    **Superiority.**    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things: (a) it is economically impracticable for members of the Class to prosecute individual actions; (b) prosecution as a class action will eliminate the possibility of repetitious and redundant litigation; and (c) a class action will enable claims to be handled in an orderly and expeditious manner.

## COUNT 1
### (Violation of the New Jersey Consumer Fraud Act
### N.J.S.A. §§ 56:8-1, et seq.)

120.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

121.    Plaintiffs bring this Count on behalf of the New Jersey Class.

122.    The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*) ("NJCFA") states in relevant part:

> [A]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise … is declared to be an unlawful practice…"  N.J.S.A. 56:8-2.

123.    Plaintiffs are consumers who purchased and/or leased Dirty Vehicles for personal, family, or household use.

124.    The advertisement, promotion, distribution, supply, sale, or lease of the Dirty Vehicles is a "sale or advertisement" of "merchandise" governed by the NJCFA.

125.    Prior to Plaintiffs' purchase or lease of the Dirty Vehicles, Defendants violated the NJCFA by making:

  a.    Uniform misrepresentations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, as set forth above; and

  b.    False and/or misleading statements about the capacity and characteristics of the Dirty Vehicles, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiffs.

29

126.    Defendants, in its communications and disclosures to the Plaintiffs and the New Jersey Class, intentionally concealed or otherwise failed to disclose that the Dirty Vehicles included defeat devices designed to cheat emissions testing, and the true emissions of the Dirty Vehicles were far higher than claimed, and that the Dirty Vehicles were incapable of achieving the advertised combination of low emissions, high performance, and fuel efficiency.

127.    Plaintiffs and the New Jersey Class reasonably expected that the Dirty Vehicles complied with the represented and claimed emissions both prior to and at the time of purchase or lease, and reasonably expected that Defendants did not use software or any other device or system to cheat emissions testing.

128.    These representations and affirmations of fact made by Defendants, and the facts it concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to purchase or lease a Dirty Vehicle.  Moreover, Defendants intended for consumers, including Plaintiffs and the New Jersey Class, to rely on these material facts.

129.    Defendants had exclusive knowledge that the Dirty Vehicles had and have the defects set forth above which gave rise to a duty to disclose these facts.  Defendants breached that duty by failing to disclose these material facts.

130.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances.  There is a strong public interest in reducing emission levels, as well as truthfully advertising emission levels.

131.    Had Plaintiffs and the New Jersey Class known about Defendants' use of the defeat devices, and/or that the Dirty Vehicles did not comply with Defendants' advertised

emissions and did not operate as advertised, they would not have purchased and/or leased the Dirty Vehicles or would have paid less than they did for them.

132.    As a direct and proximate result of Defendants' actions, Plaintiffs and the New Jersey Class have suffered ascertainable loss and other damages.

**COUNT 2**
**(Breach of Implied Warranty of Merchantability**
**N.J.S.A. §§ 12A:2-314, et seq.)**

133.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

134.    Plaintiffs bring this claim on behalf of the New Jersey Class.

135.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions.

136.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

137.    Plaintiffs and the New Jersey Class, at all relevant times, were intended direct and/or third-party beneficiaries of Defendants' sale of the Dirty Vehicles to Plaintiffs and the New Jersey Class.

138.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

139.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the New Jersey Class have been damaged in an amount to be proven at trial.

## COUNT 3
### (Violation of the Alabama Deceptive Trade Practices Act
### Ala. Code §§ 8-19-1, *et seq.*)

140.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

141.    This claim is brought only on behalf of the Alabama Class.

142.    Plaintiffs and the Alabama Class are "consumers" within the meaning of Ala. Code § 8-19-3(2).

143.    Plaintiffs, the Alabama Class, and Defendants are "persons" within the meaning of Ala. Code § 8-19-3(5).

144.    The Dirty Vehicles are "goods" within the meaning of Ala. Code. § 8-19-3(3).

145.    Defendants were and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

146.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

147.    By failing to disclose and actively concealing that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public, Defendants engaged in deceptive business practices prohibited by the Alabama DTPA, including: representing that the Dirty

32

Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not; and engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

148.     Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

149.     By failing to disclose and by actively concealing the defects in the Dirty Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Alabama DTPA.  Defendants deliberately withheld the information about the Dirty Vehicles' emissions, power, fuel efficiency and performance in order to ensure that consumers would purchase the Dirty Vehicles.

150.     Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

151.     Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Alabama Class.

33

152.    Defendants knew or should have known that their conduct violated the Alabama DTPA.

153.    Defendants owed Plaintiffs a duty to disclose the true characteristics of the Dirty Vehicles because Defendants:

       a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

       b.    Intentionally concealed the foregoing from Plaintiffs; and/or

       c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

154.    Because Defendants fraudulently concealed the many defects in Dirty Vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Dirty Vehicles has greatly diminished.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

155.    Plaintiffs and the Alabama Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had Plaintiffs and the Alabama Class been aware of the many defects that existed in the Dirty Vehicles, they either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' misconduct.

156.    Defendants' violations present a continuing risk to Plaintiffs, the Alabama Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

157.    As a direct and proximate result of Defendants' violations of the Alabama DTPA, Plaintiffs and the Alabama Class have suffered injury-in-fact and/or actual damage.

158.    Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Alabama Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Class member.

159.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ala. Code § 8-19-1, *et seq.*

### COUNT 4
### (Violation of the Consumer Fraud Act
### Ariz. Rev. Stat. §§ 44-1521, et seq.)

160.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

161.    Plaintiffs bring this claim on behalf of the Arizona Class.

162.    Plaintiffs, the Arizona Subclass, and Defendants are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

163.    The Dirty Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

164.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . of any merchandise whether or not any

person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

165.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

166.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

167.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Arizona CFA.

168.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Arizona Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

169.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Arizona Class.

170.    Defendants knew or should have known that their conduct violated the Arizona CFA.

171.    Defendants owed Plaintiffs and the Arizona Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

172.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

173.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Arizona Class.

174.    Plaintiffs and the Arizona Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Arizona Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs and the Arizona Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

175.    As a direct and proximate result of Defendants' violations of the the Arizona CFA, Plaintiffs and the Arizona Class have suffered injury-in-fact and/or actual damage.

176.    Plaintiffs and the Arizona Class seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and the Arizona Class also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

177.    Plaintiffs also seek an order enjoining Defendants unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

### COUNT 5
### (Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, et seq.)

178.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

179.    Plaintiffs bring this claim on behalf of the California Class.

180.    Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.

181.    Defendants' acts and practices constitute unlawful business practices, as discussed elsewhere in this Complaint, in that they violate section 203(a)(3)(B) of the Clean Air Act (CAA), 42 U.S.C. § 7522(a)(3)(B) and its implementing regulations; section 203(a)(l ) of the CAA, 42 U.S .C. § 7522(a)( l ) and its implementing regulations; the federal Magnuson-Moss Warranty Act; California's Consumers Legal Remedies Act; California's Song-Beverly Consumer Warranty Act; California law governing vehicle emissions; and breach Volkswagen's warranties.

182.    Defendants' acts and practices constitute unfair practices in that (i) they are unethical, unscrupulous, and substantially injurious to consumers; (ii) any legitimate utility of Defendants' conduct is outweighed by the harm to consumers; (iii) the injury is not one that consumers reasonably could have avoided; and/or (iv) the conduct runs afoul of the policies underlying the federal Clean Air Act, its implementing regulations, and California emissions

standards, which seek to minimize harmful emissions and provide consumers with accurate information about the pollutant levels emitted by vehicles placed in the stream of commerce.

183.   Defendants' acts and practices constitute fraudulent practices in that they are likely to deceive a reasonable consumer, who would not have purchased a Dirty Vehicle, or would have paid substantially less for a Dirty Vehicle, had Volkswagen had adequately disclosed that the Dirty Vehicles failed to comply with federal and California emissions standards.

184.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs and the proposed California Class have suffered injury in fact and lost money or property, in that they bought or leased Dirty Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Dirty Vehicles suffered a diminution in value. In addition, Plaintiffs and the proposed California Class will incur additional fuel costs, and a diminution in the performance of their respective Dirty Vehicles, if and when their Dirty Vehicles are altered in order to bring them into compliance with federal and state emissions standards. Meanwhile, Defendants have sold or leased more Dirty Vehicles than they otherwise could have and charged inflated prices for Dirty Vehicles, thereby unjustly enriching itself.

185.   Plaintiffs and the proposed California Class are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Defendants because of their unfair and deceptive practices and such other orders as may be necessary to prevent the future use of these practices.

**COUNT 6**
**(Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, et seq.)**

186.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

187.    Plaintiffs bring this claim on behalf of the California Class.

188.    California's False Advertising Law prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. This prohibition extends to advertising which is false, and also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.

189.    Through advertising, marketing, and other publications described at length above, Defendants disseminated, or caused to be disseminated, in California and nationally, statements regarding the Dirty Vehicles which were false or misleading, including that these vehicles are "Clean Diesel" vehicles when, in fact, they did not meet federal or California emissions standards.

190.    Defendants' misrepresentations and omissions regarding the Dirty Vehicles' emissions compliance, its performance, and its fuel efficiency were material and likely to deceive reasonable consumers such as Plaintiffs and the California Class.

191.    Volkswagen knew or should have known these statements were false and misleading and would deceive consumers, including Plaintiffs and the California Class.

192.    Plaintiffs and the California Class have suffered injury-in-fact, including the loss of money and property, as a result of Defendants' misrepresentations and omissions, which are unfair, deceptive, untrue, or misleading in violation of the False Advertising Law. Plaintiffs and the California Class would not have purchased or leased the Dirty Vehicles had they known of

the deceptive nature of Defendants' misrepresentations and omissions, or they would have paid less for the Dirty Vehicles. Also, Plaintiffs and the proposed class will incur additional fuel costs, and a diminution in the performance of their respective Dirty Vehicles, if and when their Dirty Vehicles are altered in order to bring them into compliance with federal and state emissions standards.

193.    Plaintiffs and the proposed California Class are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Defendants because of their deceptive practices and an order requiring Volkswagen to adequately disclose and repair the defect.

## COUNT 7
### (Violation of California's Consumer Legal Remedies Act
### Cal. Civ. Code §§ 1750, et seq.)

194.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

195.    Plaintiffs bring this claim on behalf of the California Class.

196.    Defendants violated the Consumers Legal Remedies Act (CLRA), California Civil Code §§ 1770(a)(2), (3), (5), (7), (9), and (16), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—namely, the sale of Dirty Vehicles to Plaintiffs and the proposed California Class—that were intended to, and did, result in the sale and lease of goods to consumers.

197.    In connection with the sale or lease of Dirty Vehicles to Plaintiffs and California Class members, Defendants concealed and failed to disclose that Dirty Vehicles do not meet federal and state emissions standards and that they achieve their performance and fuel efficiency as a result of an illegal defeat device.  These facts are material to a reasonable consumer in that

they negatively affect Dirty Vehicles' environmental emissions and market value. If and when the Dirty Vehicles are altered to bring them into compliance with federal and state emissions standards, Plaintiffs and the proposed class will incur additional fuel costs, and a diminution in the performance of their respective Dirty Vehicles.

198. Defendants had a duty to disclose these facts to consumers because they had exclusive knowledge of those facts, which were not known or reasonably knowable by the Plaintiffs and proposed class; because it actively concealed these material facts from the Plaintiffs and the proposed class; and because it made partial representations regarding Dirty Vehicles' emissions and compliance with federal and state emissions law, while at the same time suppressing material facts regarding the vehicle's emissions.

199. As a direct and proximate result of Defendants' conduct, Plaintiffs and California Class members have been harmed. Plaintiffs and the other California Class members bought or leased Dirty Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Dirty Vehicles suffered a diminution in value. Meanwhile, Defendants have sold more Dirty Vehicles than they otherwise could have and charged inflated prices for Dirty Vehicles, thereby unjustly enriching themselves.

200. Plaintiffs and the proposed Class are entitled to equitable relief and a declaration that Defendants' conduct violates the Consumer Legal Remedies Act.

201. Plaintiffs disclaims any request for monetary relief, including punitive damages, under the Consumer Legal Remedies Act at this time but reserve the right to seek such relief after providing Defendants with the notice required by the Act.

## COUNT 8
### (Violation of the Song-Beverly Consumer Warranty Act
### Cal. Civ. Code §§ 1791, et seq.)

202.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

203.    Plaintiffs bring this claim on behalf of the California Class.

204.    Dirty Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

205.    Volkswagen is a "manufacturer" within the meaning of Cal. Civ. Code § 21791(j).

206.    Volkswagen impliedly warranted to Plaintiffs and the California Class that Dirty Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

207.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet  each of the following:  (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3)  Are adequately contained, packaged, and labeled. (4)  Conform to the promises or affirmations of fact made on the container or label.

208.    Dirty Vehicles would not pass without objection in the automotive trade because the Dirty Vehicles do not conform in material respects with federal and California emissions standards, were sold with an illegal defeat device, as described above, and emit pollutants by a factor of 10 to 40 times above the EPA compliant levels.

209.    As described above, the Dirty Vehicles are not fit for ordinary purposes for which such goods are used.

43

210.     Dirty Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and California emissions standards or fails to disclose such non-compliance.

211.     Volkswagen's conduct deprived Plaintiffs and the proposed California Class of the benefit of their bargain and has caused Dirty Vehicles to be worth less than what Plaintiffs and other proposed California Class members paid.

212.     As a direct and proximate result of Volkswagen's breach of its duties, proposed California Class members received goods whose condition substantially impairs their value. Plaintiffs and the proposed California Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

213.     Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

214.     Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and proposed California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Dirty Vehicles, or the overpayment or diminution in value of their Dirty Vehicles, and are also entitled to their attorney fees and costs.

### COUNT 9
### (Violation of the Colorado Consumer Protection Act
### Colo. Rev. Stat. §§ 6-1-101, et seq.)

215.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

216.     Plaintiffs bring this claim on behalf of the Colorado Class.

217.    Defendants are "persons" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

218.    Plaintiffs and Colorado Class members are "consumers" for purposes of Col. Rev. Stat. § 6-1-113(1)(a) who purchased or leased one or more Dirty Vehicles.

219.    The Colorado CPA prohibits deceptive trade practices in the course of a person's business.  Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Dirty Vehicles that had the capacity or tendency to deceive Colorado Class members; (2) representing that the Dirty Vehicles are of a particular standard, quality, and grade even though Defendants knew or should have known they are not; (3) advertising the Dirty Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Dirty Vehicles that was known to Defendants at the time of advertisement or sale with the intent to induce Colorado Class members to purchase, lease or retain the Dirty Vehicles.

220.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

221.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

222.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high

quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Colorado CPA.

223.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Colorado Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

224.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Colorado Class.

225.    Defendants knew or should have known that their conduct violated the Colorado CPA.

226.    Defendants owed Plaintiffs and the Colorado Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs and the Colorado Class; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Colorado Class that contradicted these representations.

227.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

228.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Colorado Class.

229.    Plaintiffs and the Colorado Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Colorado Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Colorado Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

230.    As a direct and proximate result of Defendants' violations of the Colorado CPA, Plaintiffs and the Colorado Class have suffered injury-in-fact and/or actual damage.

231.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs individually and on behalf of the Colorado Class, seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff and each Colorado Class member.

232.    Plaintiffs and the Colorado Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

### COUNT 10
### (Breach of the Implied Warranty of Merchantability
### Colo. Rev. Stat. § 4-2-314)

233.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

234.    Plaintiffs bring this claim on behalf of the Colorado Class.

235.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to Colo. Rev. Stat. § 4-2-314.

236.     The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

237.     Plaintiffs and the Colorado Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the Colorado Class.

238.     Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

239.     As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the Colorado Class have been damaged in an amount to be proven at trial.

## COUNT 11
**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
815 ILCS 505/1, et seq.)**

240.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

241.     Plaintiffs bring this claim on behalf of the Illinois Class.

242.     Defendants are "persons" as that term is defined in 815 ILCS 505/1(c).

243.     Plaintiffs and the Illinois Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

244.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

245.    Defendants participated in misleading, false, or deceptive acts that violated the Illinois CFA.  By failing to disclose and actively concealing that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public, Defendants engaged in deceptive business practices prohibited by the Illinois CFA.

246.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

247.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

248.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Illinois CFA.

249.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable

consumers, including Plaintiffs and the Illinois Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

250.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Illinois Class.

251.    Defendants knew or should have known that their conduct violated the Illinois CFA.

252.    Defendants owed Plaintiffs and the Illinois Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

253.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

254.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Illinois Class.

255.    Plaintiffs and the Illinois Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Illinois Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs and the Illinois Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

256.    As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiffs and the Illinois Class have suffered injury-in-fact and/or actual damage.

257.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Class seek monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

258.    Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq*.

### COUNT 12
**(Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/1, et seq.)**

259.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

260.    Plaintiffs bring this claim on behalf of the Illinois Class.

261.    Illinois's Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 ILCS 510/2, prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (7) represent[ing] that goods or services are of a particular standard, quality, or grade … if they are of another; … (9) advertis[ing] goods or services with intent not to sell them as advertised; … [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

262.    Defendants are "persons" as defined in 815 ILCS 510/1(5).

263.    In the course of Defendants' business, failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public as described above.  Accordingly, Defendants engaged in deceptive trade practices as defined in 815 ILCS 510/2, including representing that the Dirty Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

264.    Defendants intended for Plaintiffs and the Illinois Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

265.    Defendants' actions as set forth below and above occurred in the conduct of trade or commerce.

266.    Defendants' conduct proximately caused injuries to Plaintiffs and the Illinois Class.

267.    Plaintiffs and the Illinois Class were injured as a result of Defendants' conduct in that Plaintiffs and the Illinois Subclass overpaid for their Dirty Vehicles and did not receive the benefit of their bargain, and their Dirty Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

268.    Plaintiffs seek an order enjoining Defendants' deceptive practices, attorneys' fees, and any other just and proper relief available under the Illinois UDTPA per 815 ILCS 510/3.

## COUNT 13
### (Violation of the Michigan Consumer Protection Act
### Mich. Comp. Laws §§ 445.903, et seq.)

269.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

270.    Plaintiffs bring this claim on behalf of the Michigan Class.

271.    Plaintiffs and the Michigan Class are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

272.    At all relevant times hereto, Defendants were persons engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

273.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . ."  Mich. Comp. Laws § 445.903(1).  Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Mich. Comp. Laws § 445.903(1).  By failing to disclose and actively concealing the dangers and risks posed by the Dirty Vehicles , Defendants participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

274.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

275.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

276.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Michigan CPA.

277.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Michigan Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

278.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Michigan Class.

279.    Defendants knew or should have known that their conduct violated the Michigan CPA.

280.    Defendants owed Plaintiffs and the Michigan Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the

foregoing; (b) intentionally concealed the foregoing from Plaintiffs and the Michigan Class; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Michigan Class that contradicted these representations.

281.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

282.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Michigan Class.

283.    Plaintiffs and the Michigan Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Michigan Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Michigan Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

284.    As a direct and proximate result of Defendants' violations of the Michigan CPA, Plaintiffs and the Michigan Class have suffered injury-in-fact and/or actual damage.

285.    Plaintiffs seek injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

286.    Plaintiffs also seek punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights of others.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

**COUNT 14**
**(Breach of the Implied Warranty of Merchantability**
**Mich. Comp. Laws § 440.2314)**

287.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

288.    Plaintiffs bring this claim on behalf of the Michigan Class.

289.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to Mich. Comp. Laws § 440.2314.

290.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

291.    Plaintiffs and the Michigan Class, at all relevant times, were intended direct and/or third-party beneficiaries of Defendants' sale of the Dirty Vehicles to Plaintiffs and the Michigan Class.

292.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

293.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the Michigan Class have been damaged in an amount to be proven at trial.

## COUNT 15
### (Violation of the Minnesota Prevention of Consumer Fraud Act
### Minn. Stat. §§ 325F.68, et seq.)

294.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

295.    This claim is brought only on behalf of the Minnesota Class.

296.    Plaintiffs, the Minnesota Class, and Defendants are "persons" within the meaning of Minn. Stat. § 325F.68(3).

297.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . ." Minn. Stat. § 325F.69(1).  Defendants participated in misleading, false, or deceptive acts that violated the Minnesota CFA.  By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in deceptive business practices prohibited by the Minnesota CFA.

298.    Defendants' actions as set forth below and above occurred in the conduct of trade or commerce.

299.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

300.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

301.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Minnesota CFA.

302.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Minnesota Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

303.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Minnesota Class.

304.    Defendants knew or should have known that their conduct violated the Minnesota CFA.

305.    Defendants owed Plaintiffs and the Minnesota Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

306.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

307.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Minnesota Class.

308.    Plaintiffs and the Minnesota Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Minnesota Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Minnesota Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

309.    Defendants' violations present a continuing risk to Plaintiffs, the Minnesota Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

310.    As a direct and proximate result of Defendants' violations of the Minnesota CFA, Plaintiffs and the Minnesota Class have suffered injury-in-fact and/or actual damage.

311.    Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

312.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) give the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

## COUNT 16
### (Violation of the Minnesota Uniform Deceptive Trade Practices Act
### Minn. Stat. §§ 325D.43-48, *et seq.*)

313.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

314.    This claim is brought only on behalf of the Minnesota Class.

315.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised."  Minn. Stat. § 325D.44.

316.    Defendants' actions as set forth below and above occurred in the conduct of trade or commerce.

317.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

318.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

319.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high

quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Minnesota DTPA.

320.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Minnesota Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

321.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Minnesota Class.

322.    Defendants knew or should have known that their conduct violated the Minnesota DTPA.

323.    Defendants owed Plaintiffs and the Minnesota Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

324.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

325.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Minnesota Class.

326.    Plaintiffs and the Minnesota Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Minnesota Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Minnesota Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

327.    Defendants' violations present a continuing risk to Plaintiffs, the Minnesota Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

328.    As a direct and proximate result of Defendants' violations of the Minnesota DTPA, Plaintiffs and the Minnesota Class have suffered injury-in-fact and/or actual damage.

329.    Pursuant to Minn. Stat. § 8.31(3a) and 325D.45, Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.  Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) give the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

## COUNT 17
### (Breach of the Implied Warranty of Merchantability
### Minn. Stat. § 336.2-314)

330.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

331.    Plaintiffs bring this claim on behalf of the Minnesota Class.

332.    Defendants are and was at all relevant times merchants with respect to motor vehicles within the meaning of Minn. Stat. § 336.2-104(1).

333.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in Dirty Vehicle transactions, pursuant to Minn. Stat. § 336.2-314.

334.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

335.    Plaintiffs and the Minnesota Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the Minnesota Class.

336.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

337.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the Minnesota Class have been damaged in an amount to be proven at trial.

### COUNT 18
**(Violation of the Missouri Merchandising Practices Act
Mo. Rev. Stat. §§ 407.010 et seq.)**

338.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

339.    Plaintiffs bring this claim on behalf of the Missouri Class.

340.    Plaintiffs, the Missouri Class, and Defendants are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

341.    Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

342.     The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

343.     In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

344.     Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

345.     By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Missouri MPA.

346.     Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Missouri Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

347.     Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Missouri Class, including without limitation by failing to disclose the defects in light of circumstances under which the omitted

facts were necessary in order to correct the assumptions, inferences or representations being made by Defendants about the safety and/or reliability of the Dirty Vehicles. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. Code of Serv. Reg. §60-9.090.

348.    Because Defendants knew or believed that its statements regarding safety and/or reliability of the Dirty Vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Defendants engaged in fraudulent misrepresentations pursuant to 15 Mo. Code of Serv. Reg.60-9.100.

349.    Defendants' conduct as described herein is unethical, oppressive, or unscrupulous insofar as Defendants purposefully and deliberately deceived Plaintiffs, the Missouri Class, the public, and regulators with respect to the illegal amount of toxic emissions emanating from their vehicles.  Defendants'' choice to increase profits and sales at the cost of doing harm to their customers constitutes an unfair practice in violation of 15 Mo. Code of Serv. Reg. 60-8.020.

350.    Defendants knew or should have known that their conduct violated the Missouri MPA.

351.    Defendants owed Plaintiffs and the Missouri Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

352.     The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

353.     Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the the Missouri Class.

354.     Plaintiffs and the Missouri Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Missouri Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Missouri Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

355.     Defendants' violations present a continuing risk to Plaintiffs, the Missouri Subclass, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

356.     As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiffs and the Missouri Class have suffered injury-in-fact and/or actual damage.

357.     Defendants are liable to Plaintiffs and the Missouri Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**COUNT 19**
**(Breach of the Implied Warranty of Merchantability**
**Mo. Rev. Stat. § 400.2-314)**

358.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

359.    Plaintiffs bring this claim on behalf of the Missouri Class.

360.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to Mo. Rev. Stat. § 400.2-314.

361.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

362.    Plaintiffs and the Missouri Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the Missouri Class.

363.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the Missouri Class have been damaged in an amount to be proven at trial.

**COUNT 20**
**(Violation of the New Hampshire Consumer Protection Act**
**N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq*.)**

364.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

365.    Plaintiffs bring this claim on behalf of the New Hampshire Class.

67

366.    Plaintiffs, the New Hampshire Class, and Defendants are "persons" within the meaning of the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. Ann. § 358-A:1.

367.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. Ann. § 358-A:1.

368.    The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: . . . (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. Ann. § 358-A:2.

369.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

370.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

371.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the New Hampshire CPA.

372.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the New Hampshire Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

373.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the New Hampshire Class, including without limitation by failing to disclose the defects in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Defendants about the safety and/or reliability of the Dirty Vehicles. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. Code of Serv. Reg. §60-9.090.

374.    Because Defendants knew or believed that its statements regarding safety and/or reliability of the Dirty Vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Defendants engaged in fraudulent misrepresentations.

375.    Defendants knew or should have known that their conduct violated the New Hampshire CPA.

376.    Defendants owed Plaintiffs and the New Hampshire Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete

69

representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

377.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

378.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the New Hampshire Class.

379.    Plaintiffs and the New Hampshire Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the New Hampshire Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs and the New Hampshire Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

380.    Defendants' violations present a continuing risk to Plaintiffs, the New Hampshire Subclass, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

381.    As a direct and proximate result of Defendants' violations of the New Hampshire CPA, Plaintiffs and the New Hampshire Class have suffered injury-in-fact and/or actual damage.

382.    Because Defendants' willful conduct caused injury to New Hampshire Subclass members' property through violations of the New Hampshire CPA, the New Hampshire Subclass seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Defendants' unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. Ann. § 358-A:10.

**COUNT 21**
**(Breach of the Implied Warranty of Merchantability**
**N.H. Rev. Stat. Ann. § 382-A:2-314)**

383.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

384.    Plaintiffs bring this claim on behalf of the New Hampshire Class.

385.    Defendants are and was at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of N.H. Rev. Stat. Ann. § 382-A:2-104(1).

386.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to N.H. Rev. Stat. Ann. § 382-A:2-314.

387.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

388.    Plaintiffs and the New Hampshire Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the New Hampshire Class.

389.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the New Hampshire Class have been damaged in an amount to be proven at trial.

**COUNT 22**
**(Violation of New York General Business Law**
**N.Y. Gen. Bus. Law § 349)**

390.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

391.    Plaintiffs bring this claim on behalf of the New York Class.

392.    Plaintiffs and New York Sub-Class are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

393.    Defendants are "persons," "firms," "corporations," or "associations" within the meaning of N.Y. Gen. Bus. Law § 349.

394.    The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

395.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

396.    By failing to disclose and actively concealing that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public, Defendants engaged in unfair or deceptive practices prohibited by the New York GBL, including: (1) representing that the Dirty Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; and (3) advertising them with the intent not to sell or lease them as advertised.

397.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

398.    By failing to disclose and by actively concealing the excessive, toxic emissions in the Dirty Vehicles, by marketing them as clean, fuel efficient, safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the New York GBL.

399.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true nature and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

400.    Defendants knew or should have known that their conduct violated the New York GBL.

401.    As alleged above, Defendants made material statements about the environmental friendliness, fuel efficiency, performance, safety and reliability of the Dirty Vehicles that were either false or misleading.

402.    Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

403.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

404.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the New York Class.

405.    Plaintiffs and the New York Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

406.    As a direct and proximate result of Defendants' violations of the New York GBL, Plaintiffs and the New York Class have suffered injury-in-fact and/or actual damage.

407.    Because Defendants' willful and knowing conduct caused injury to the New York Sub-Class, the New York Sub-Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## COUNT 23
### (Violation of New York General Business Law
### N.Y. Gen. Bus. Law § 350)

408.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

409.    Plaintiffs bring this claim on behalf of the New York Class.

410.    Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

411.    N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of

a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

412.    Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the New York Class.

413.    Defendants have violated § 350 because the misrepresentations and omissions regarding the Dirty Vehicles' ability to run "clean," without emanating excessive toxic pollutants, and their ability to achieve favorable miles per gallon ratings  were material and likely to deceive a reasonable consumer.

414.    New York Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing or leasing Dirty Vehicles, New York Plaintiffs and the New York Class relied on the misrepresentations and/or omissions of Defendants with respect to the level of toxic pollutants emitted by the Dirty Vehicles, as well as the Dirty Vehicles' fuel efficiency, performance, safety and reliability.

415.    Defendants' representations were false and/or misleading because the concealed toxic emissions defect seriously undermines the value of the Dirty Vehicles.  Had Plaintiffs and the New York Class known this, they would not have purchased or leased their vehicles

416.    and/or paid as much for them.

417.    Pursuant to N.Y. Gen. Bus. Law § 350 e, the New York Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for New York Class

member. Because Defendants' conduct was committed willfully and knowingly, New York members are entitled to recover three times actual damages, up to $10,000, for each New York Class member.

418.    The New York Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

**COUNT 24**
**(Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1, et seq.)**

419.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

420.    This claim is brought on behalf of the North Carolina Class.

421.    Defendants engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

422.    The North Carolina Act broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). As alleged above and below, Defendants willfully committed unfair or deceptive acts or practices in violation of the North Carolina Act.

423.    In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

424.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

425.    By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the North Carolina Act.

426.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the North Carolina Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

427.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the North Carolina Class.

428.    Defendants knew or should have known that their conduct violated the North Carolina Act.

429.    Defendants owed Plaintiffs and the North Carolina Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs and the North Carolina Class; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the North Carolina Class that contradicted these representations.

430.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

431.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the North Carolina Class.

432.    Plaintiffs and the North Carolina Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the North Carolina Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the North Carolina Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

433.    As a direct and proximate result of Defendants' violations of the North Carolina Act, Plaintiffs and the North Carolina Class have suffered injury-in-fact and/or actual damage.

434.    Plaintiffs and the North Carolina Class seek punitive damages against Defendants because Defendants' conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

435.    Plaintiffs and the North Carolina Class seek an order to treble their actual damages, an order enjoining Defendants' unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

**COUNT 25**
**(Breach of the Implied Warranty of Merchantability**
**N.C. Gen. Stat. § 25-2-314)**

436.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

437.    Plaintiffs bring this claim on behalf of the North Carolina Class.

438.    Defendants are and was at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of N.C. Gen. Stat. § 25-2-314.

439.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to N.C. Gen. Stat. § 25-2-314.

440.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

441.    Plaintiffs and the North Carolina Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the North Carolina Class.

442.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

443.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the North Carolina Class have been damaged in an amount to be proven at trial.

### COUNT 25
### (Violation of the North Dakota Consumer Fraud Act
### N.D. Cent. Code §§ 51-15-02, *et seq*.)

444.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

445.    This claim is brought on behalf of the North Dakota Class.

446.    Plaintiffs, the North Dakota Class, and Defendants are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

447.    Defendants engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

448. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…." N.D. Cent. Code § 51-15-02. As alleged above and below, Defendants willfully committed unfair or deceptive acts or practices in violation of the North Dakota CFA.

449. In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

450. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

451. By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the North Dakota CFA.

452. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the North Dakota Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

453.    Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the North Dakota Class.

454.    Defendants knew or should have known that their conduct violated the North Dakota CFA.

455.    Defendants owed Plaintiffs and the North Dakota Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs and the North Dakota Class; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the North Dakota Class that contradicted these representations.

456.    The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

457.    Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the North Dakota Class.

458.    Plaintiffs and the North Dakota Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the North Dakota Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the North Dakota Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

459.    As a direct and proximate result of Defendants' violations of the North Dakota CFA, Plaintiffs and the North Dakota Class have suffered injury-in-fact and/or actual damage.

460.    Plaintiffs and the North Dakota Class seek punitive damages against Defendants because Defendants' conduct was egregious, malicious, willful, reckless, wanton, fraudulent and in bad faith.

461.    Further, Defendants knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Defendants is liable to Plaintiffs and the North Dakota Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.  Plaintiffs further seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT 26
### (Breach of the Implied Warranty of Merchantability
### N.D. Cent. Code § 41-02-31)

462.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

463.    Plaintiffs bring this claim on behalf of the North Dakota Class.

464.    Defendants are and was at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of N.D. Cent. Code § 41-02-31.

465.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to N.D. Cent. Code § 41-02-31.

466.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

467.     Plaintiffs and the North Dakota Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the North Dakota Class.

468.     Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

469.     As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the North Dakota Class have been damaged in an amount to be proven at trial.

**COUNT 27**
**(Violation of the Consumer Sales Practices Act**
**Ohio Rev. Code §§ 1345.01, *et seq*.)**

470.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

471.     This claim is brought on behalf of the Ohio Class.

472.     Plaintiffs and the Ohio Subclass are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchases and leases of the Dirty Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

473.     Defendants are "suppliers" as that term is defined in Ohio Rev. Code § 1345.01(C).

474.     The Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject

of a consumer transaction has been supplied in accordance with a previous representation, if it has not. *Id.* Defendants' conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.  As alleged above and below, Defendants willfully committed unfair or deceptive acts or practices in violation of the Ohio CSPA.

475.   In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

476.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

477.   By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Ohio CSPA.

478.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Ohio Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

479.   Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Ohio Class.

480.     Defendants knew or should have known that their conduct violated the Ohio CSPA.

481.     Defendants owed Plaintiffs and the Ohio Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs and the Ohio Class; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Ohio Class that contradicted these representations.

482.     The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

483.     Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Ohio Class.

484.     Plaintiffs and the Ohio Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Ohio Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs and the Ohio Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

485.     As a direct and proximate result of Defendants' violations of the Ohio CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual damage.

486.    Plaintiffs and the Ohio Class seek punitive damages against Defendants because Defendants' conduct was egregious, malicious, willful, reckless, wanton, fraudulent and in bad faith.

487.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the Ohio Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendants' deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to Ohio Rev. Code § 1345.09, *et seq*.

## COUNT 28
### (Violation of the Deceptive Trade Practices Act
### Tex. Bus. & Com. Code §§ 17.41, et seq.)

488.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

489.    Plaintiffs bring this claim on behalf of the Texas Class.

490.    Plaintiffs and the Texas Class are individuals, partnerships and corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets).  *See* Tex. Bus. & Com. Code § 17.41.

491.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  Tex. Bus. & Com. Code § 17.45(5); Tex. Bus. & Com. Code § 17.50(a)(3).

Defendants have committed false, misleading, unconscionable, and deceptive acts or practices in the conduct of trade or commerce.

492. Defendants also violated the Texas DTPA by: (1) representing that the Dirty Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; (3) advertising them with the intent not to sell them as advertised; and (4) failing to disclose information concerning them with the intent to induce consumers to purchase or lease them.

493. In the course of their business, Defendants failed to disclose and actively concealed that the Dirty Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

494. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

495. By failing to disclose and by actively concealing the true nature of the Dirty Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Texas DTPA.

496. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Texas Class, about the true safety and reliability of Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

497.     Defendants intentionally and knowingly misrepresented material facts regarding the Dirty Vehicles with an intent to mislead Plaintiffs and the Texas Class.

498.     Defendants knew or should have known that their conduct violated the Texas DTPA.

499.     Defendants owed Plaintiffs and the Texas Class a duty to disclose the true nature of the Dirty Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

500.     The value of the Dirty Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Dirty Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

501.     Defendants' failure to disclose and active concealment of the nature of the Dirty Vehicles' emissions were material to Plaintiffs and the Texas Class.

502.     Plaintiffs and the Texas Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Dirty Vehicles' emissions, Plaintiffs and the Texas Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs and the Texas Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

503.     As a direct and proximate result of Defendants' violations of the Texas DTPA, Plaintiffs and the Texas Class have suffered injury-in-fact and/or actual damage.

504.    Pursuant to Tex. Bus. & Com. Code § 17.50(a)(1) and (b), Plaintiffs and the Texas Class seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages for Defendants' knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

505.    For those Texas Class members who wish to rescind their purchases, they are entitled under Tex. Bus. & Com. Code § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

506.    Plaintiffs and the Texas Class also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

## COUNT 29
### (Breach of the Implied Warranty of Merchantability
### Tex. Bus. & Com. Code § 2.314)

507.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

508.    Plaintiffs bring this claim on behalf of the Texas Class.

509.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law in the Dirty Vehicle transactions, pursuant to Tex. Bus. & Com. Code § 2.314.

510.    The Dirty Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public

511.    Plaintiffs and the Texas Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Dirty Vehicles to Plaintiffs and the Texas Class.

512.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

513.    As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the Texas Class have been damaged in an amount to be proven at trial.

### COUNT 30
**(Violation of the Virginia Consumer Protection Act
Va. Code Ann. §§ 59.1-196, et seq.)**

514.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

515.    This claim is brought on behalf of the Virginia Class.

516.    Defendants are "suppliers" under Va. Code Ann. § 59.1-198.

517.    The sale of the Dirty Vehicles was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

518.    The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" which include: "5. Misrepresenting that good or services have certain characteristics;" "6. Misrepresenting that goods or services are of a particular standard, quality, grade style, or model;" "8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" "9. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "14. Using any other deception, fraud, or misrepresentation in connection with a

consumer transaction." Va. Code Ann. § 59.1-200.  Defendants violated the Virginia CPA by misrepresenting that the Dirty Vehicles had certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that they were of a particular standard, quality, grade, style, or model when they were another; advertising them with intent not to sell them as advertised; and otherwise using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

519.    In the course of their business, Defendants failed to disclose and actively concealed the true condition of the Dirty Vehicles, including their conformity with applicable emissions standards and their true performance capabilities.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Dirty Vehicles.

520.    Defendants have known of the defects and in fact intentionally hid and mislead the public, regulators, and others regarding the true nature of the emissions systems and the performance of the Dirty Vehicles.

521.    By failing to disclose and by actively concealing the defects in the emissions systems and true performance and by marketing the Dirty Vehicles as in compliance with applicable regulations, Defendants engaged in unfair or deceptive business practices in violation of the Virginia CPA.  Defendants deliberately obfuscated the true nature of the emissions systems and performance instead of disclosing the truth in order to ensure that consumers would purchase the Dirty Vehicles.

522.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true nature of the emissions system and performance of the Dirty Vehicles, the quality of Defendants' brands, and the true value of the Dirty Vehicles.

523.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the emissions systems and performance with intent to mislead Plaintiffs and the Virginia Class.

524.    Defendants knew or should have known that their conduct violated the Virginia CPA.

525.    As alleged above, Defendants made material statements about the Dirty Vehicles that were either false or misleading.

526.    To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the defects in the Dirty Vehicles and allowed unsuspecting new and used car purchasers to continue to buy/lease the Dirty Vehicles, and allowed them to continue driving vehicles that failed to meet emissions regulations.

527.    Defendants owed Plaintiffs a duty to disclose the emissions system's performance and the vehicle performance because Defendants: (a) possessed exclusive knowledge of the actual output of the emissions systems; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Virginia Class that contradicted these representations.

528.    Because Defendants fraudulently concealed material facts described herein regarding the Dirty Vehicles the value of the Dirty Vehicles has greatly diminished.  In light of the stigma attached to the Dirty Vehicles, they are now worth significantly less than they otherwise would be.

529.    Defendants' failure to disclose and active concealment of the true nature of the emissions systems and performance of the Dirty Vehicles was and is material to Plaintiffs and the Virginia Class.  A vehicle made by a reputable manufacturer is worth more than an otherwise comparable vehicle made by a disreputable manufacturer that conceals defects and actively obfuscates their true characteristics rather than promptly remedying them or properly manufacturing them in the first instance.

530.    Plaintiffs and the Virginia Class suffered ascertainable loss caused by Defendants' concealment, obfuscations, misrepresentations and their failure to disclose material information. Had they been aware of the many defects that existed in the Dirty Vehicles, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' misconduct.

531.    Defendants' violations present a continuing loss to Plaintiffs, the Virginia Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

532.    As a direct and proximate result of Defendants' violations of the Virginia CPA, Plaintiffs and the Virginia Class have suffered injury-in-fact and/or actual damage.

533.    Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs and the Virginia Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and

each Virginia Class member.  Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Virginia Class member, the greater of (a) three times actual damages or (b) $1,000.

534.    Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under General Business Law § 59.1-204, *et seq*.

**COUNT 31**
**(Breach of the Implied Warranty of Merchantability**
**Va. Code Ann. § 8.2-314)**

535.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

536.    Defendants are and was at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of Va. Code Ann. § 8.2-314.

537.    A warranty that the Dirty Vehicles were in merchantable condition was implied by law pursuant to Va. Code Ann. § 8.2-314.

538.    The Dirty Vehicles when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that their emissions systems do not meet applicable standards and their performance is not equal to that represented.

539.    Defendants knew of the issues alleged herein prior to the sale of the Dirty Vehicles and intentionally designed, built, installed or otherwise utilized the "defeat device" in the Dirty Vehicles.

540.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Virginia Class have been damaged in an amount to be proven at trial.

## COUNT 32
### (Fraudulent Concealment)

541.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

542.    Plaintiffs bring this Count on behalf of the Nationwide Class.

543.    Defendants intentionally concealed material facts from Plaintiffs, the other Class members, the public, and regulators, including but not limited to the EPA and CARB. Defendants knew that the Dirty Vehicles were designed and manufactured with a failed emissions control system, but Defendants concealed those material facts.  Although the Dirty Vehicles contain material design defects that Defendants knew of at the time of distribution, Defendants recklessly manufactured and distributed those vehicles to consumers in the United States.  Those consumers had no knowledge of the defects.

544.    Defendants had a duty to disclose the facts to Plaintiffs, the other Class members, the public, and Regulators, but failed to do so.

545.    Defendants knew that Plaintiffs and the other Class members had no knowledge of those facts and that neither Plaintiffs nor the other Class members had an equal opportunity to discover the facts.  Defendants were in a position of superiority over Plaintiffs and the other Class members.  Indeed, Plaintiffs and the other Class members trusted Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle functioning and safety.

546.    By failing to disclose these material facts, Defendants intended to induce Plaintiffs and the other Class members to purchase or lease the Dirty Vehicles.

**COUNT 33**
**(Unjust Enrichment)**

547.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

548.    Plaintiffs bring this claim on behalf of the Nationwide Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment.

549.    Defendants have received and retained a benefit from the Plaintiffs and the Class and inequity has resulted.

550.    Defendants have benefitted through their unjust conduct by selling Dirty Vehicles with a concealed safety- and reliability-related defect, at a profit and for more than these Dirty Vehicles were worth to Plaintiffs, who overpaid for them and/or would not have purchased them at all.

551.    It is inequitable for Defendants to retain these benefits.

552.    Plaintiffs do not have an adequate remedy at law.

553.    As a result of Defendants' conduct, the amount of Defendants' unjust enrichment should be disgorged in an amount to be proven at trial.

**COUNT 34**
**(Violation of 18 U.S.C. § 1962(c),**
**Racketeer Influenced And Corrupt Organizations Act ("RICO"))**

554.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

555.    Plaintiffs bring this Count on behalf of the Nationwide Class.

556. Defendants are all "persons" under 18 U.S.C. § 1961(3).

557. Defendants violated 18 U.S.C § 1962(c) by participating in or conducting the affairs of the Volkswagen RICO Enterprise through a pattern of racketeering activity.

558. Plaintiffs and members of the Class are "person[s] injured in his or her business or property" by reason of the Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

**The Volkswagen RICO Enterprise**

559. The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the Volkswagen RICO Enterprise:

a. **Defendants**, who designed, manufactured, and sold millions of Dirty Vehicles knowing that they emitted a much greater amount of toxic pollutants than (a) allowed under applicable regulations and (b) represented to Plaintiffs, the Class and the consuming public generally.

b. **The Defendants' Officers, Executives, and Engineers**, who have collaborated and colluded with each other and with other associates in fact in the Volkswagen RICO Enterprise to deceive Plaintiffs and the Class into purchasing Dirty Vehicles, and who actively concealed the true and dirty nature of the Dirty Vehicles from Plaintiffs and the Class.

560. The Volkswagen RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose. The Volkswagen RICO Enterprise had an ongoing organization with an

ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

561.    While Defendants participated in the conduct of the Volkswagen RICO Enterprise, they had an existence separate and distinct from the Volkswagen RICO Enterprise. Further, the Volkswagen RICO Enterprise was separate and distinct from the pattern of racketeering in which Defendants have engaged.

562.    At all relevant times, Defendants operated, controlled or managed the Volkswagen RICO Enterprise, through a variety of actions described herein.  Defendants' participation in the Volkswagen RICO Enterprise was necessary for the successful operation of its scheme to defraud because Defendants manufactured the Dirty Vehicles, concealed the true nature of the Dirty Vehicles, and profited from such concealment.

563.    The members of the Volkswagen RICO Enterprise all served a common purpose: to sell as many Dirty Vehicles as possible to the public, and thereby maximize the revenue and profitability of the Volkswagen RICO Enterprise's members.  The members of the Volkswagen RICO Enterprise shared the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.  Each member of the Volkswagen RICO Enterprise benefited from the common purpose of the scheme to defraud: Defendants sold or leased more Dirty Vehicles, and received more for those vehicles, than they would have otherwise had the "defeat device" and true amount of pollutant emissions not been concealed.

564.    Defendants conducted and participated in the conduct of the affairs of Volkswagen RICO Enterprise through a pattern of racketeering activity that has lasted for more than a decade, beginning no later than 2004 and continuing to this day, and that consisted of

numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

565.    The purpose of the scheme to defraud was to conceal the fact that, contrary to Defendants' express representations, the Dirty Vehicles were not "clean," but instead emitted incredibly high levels of toxic pollutants, including nitrogen oxide.  Defendants' opted to conceal this information in order to sell more Dirty Vehicles, to sell them at a higher price, and to avoid incurring the expenses associated with manufacturing actually "clean" vehicles.  To further the scheme to defraud, Defendants repeatedly misrepresented and concealed the nature of the Dirty Vehicles.  Specifically, Defendants repeatedly described the Dirty Vehicles as "clean," "environmentally friendly," and "fuel efficient."

566.    To carry out, or attempt to carry out the scheme to defraud, Defendants have conducted or participated in the conduct of the affairs of the Volkswagen RICO Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

a.    Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including Defendants' website, communications with regulatory agencies, statements to the press, and communications with other members of the Volkswagen RICO Enterprise, as well as advertisements and other communications to Defendants' customers, including Plaintiffs and Class Members; and

b.　　Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein.

567.　Defendants' conduct in furtherance of this scheme was intentional.  Plaintiffs and the Class were harmed as a result of Defendants' intentional conduct.  Plaintiffs, the Class, and regulators, among others, relied on Defendants' material misrepresentations and omissions.

568.　As described throughout this Complaint, Defendants engaged in a pattern of related and continuous predicate acts for more than a decade.  The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other Class members and obtaining significant monies and revenues from them while providing Dirty Vehicles worth significantly less than the purchase price paid.  The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts were related and not isolated events.

569.　The predicate acts all had the purpose of generating significant revenue and profits for Defendants at the expense of Plaintiffs and the Class.  The predicate acts were committed or caused to be committed by Defendants through their participation in the Volkswagen RICO Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved obtaining Plaintiffs' and Class members' funds and avoiding the expenses associated with remediating the Dirty Vehicles.

570.　By reason of and as a result of the conduct of Defendants, and in particular, its pattern of racketeering activity, Plaintiffs and the Class have been injured in their business and/or property in multiple ways, including but not limited to:

a.    overpayment for leased or purchased Dirty Vehicles, in that Plaintiffs believed they were paying for vehicles that met certain emission and fuel efficiency standards and obtained vehicles with anything but;

b.    the value of the Dirty Vehicles has diminished, thus reducing their resale value;

c.    out-of-pocket and loss-of-use expenses;

d.    payment for alternative transportation; and

e.    loss of employment due to lack of transportation.

571.    Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and the Class, and Plaintiffs and the Class are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

<u>**COUNT 35**</u>
**(Violation of 15 U.S.C. §§ 2301 *et seq.*, the Magnuson-Moss Warranty Act)**

572.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

573.    Plaintiffs bring this Count on behalf of the Nationwide Class.

574.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

575.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

576.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

577.    The Dirty Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

578.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

579.    Defendants express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Dirty Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

580.    Defendants breached these warranties as described in more detail above.  Without limitation, the Dirty Vehicles share a common design defect in that they emit more pollutants than (a) is allowable under the applicable regulations and (b) Defendants repeatedly represented to their customers, the public and regulators.  Defendants have admitted that the Dirty Vehicles are defective in issuing the recall.

581.    Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each of the other Class members, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of Defendants' implied warranties.  The dealers were not intended to be the ultimate consumers of the Dirty Vehicles and have no rights under the warranty agreements provided with the Dirty Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.  Finally, privity is also not required because the Dirty Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

582.    Affording Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  At the time of sale or lease of each Dirty Vehicle, Defendants knew of the misrepresentations concerning the Dirty Vehicles' inability to

perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

583.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Dirty Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and have not immediately returned any payments made, Plaintiffs and the other Class members have not re-accepted their Dirty Vehicles by retaining them.

584.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

(a)    An order certifying the proposed Class designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class Counsel;

(b)    An order requiring Defendants to buy back the Dirty Vehicles or, alternatively, free of charge:  (i) remove their defeat devices, (ii) ensure that they comply with all applicable emissions standards, (iii) ensure they conformed to promised performance and fuel economy guarantees;

(c)     An order awarding Plaintiffs and the proposed Class compensatory, exemplary, and statutory penalties and/or damages, including interest, in an amount to be proven at trial;

(d)     A declaration that the Defendants must disgorge, for the benefit of Plaintiffs and the Class, all or part of the ill-gotten profits it received from the sale or lease of the Dirty Vehicles, or make full restitution to Plaintiffs and the Class Members;

(e)     An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Dirty Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Dirty Vehicles;

(f)     An award of damages, or an award of treble or multiple damages, as provided by applicable law.

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of pre-judgment and post-judgment interest, as provided by law;

(i)     Leave to amend this Complaint to conform to the evidence produced at trial and such other relief as may be appropriate under the circumstances.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs


By:___/s/ James E. Cecchi_____
          JAMES E. CECCHI

Dated: October 20, 2015

Roland Tellis                                        Christopher A. Seeger
Mark Pifko                                           Jeffrey S. Grand
Pablo Orozco                                         Scott A. George
**BARON & BUDD, P.C.**                               **SEEGER WEISS LLP**
15910 Ventura Boulevard, Suite 1600                  77 Water St., 26th Fl.
Encino, California  91436                             New York, New York 10005
(818) 839-2333                                        (212) 584-0700

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs request trial by jury on all issues so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs


By:   /s/ James E. Cecchi
        JAMES E. CECCHI

Dated: October 20, 2015

Roland Tellis
Mark Pifko
Pablo Orozco
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
(818) 839-2333

Christopher A. Seeger
Jeffrey S. Grand
Scott A. George
**SEEGER WEISS LLP**
77 Water St., 26th Fl.
New York, New York 10005
(212) 584-0700